ELIZABETH TRUST COMPANY, A CORPORATION, PLAIN-
TIFF-RESPONDENT, v. JOHN H. WILLIAMS, DEFEND-
ANT-APPELLANT.

Submitted October 31, 1941—Decided January 9, 1942.

For the plaintiff-respondent. *Samuel Koestler*.

For. the defendant-appellant, *Louis C. Lehmann, Jr*.

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. This is an appeal from a plain-
tiff's judgment in the Supreme Court (Union County),
entered upon verdict directed against the defendant. The
plaintiff bank brought suit on a promissory note made by
Seeber Brewing Company, endorsed by appellant, John H.
Williams. The brewing company was indebted to the bank
on several note obligations and had assigned to it many
accounts receivable as collateral security therefor. Prior to
the transaction in question the appellant was indebted to the
bank for his own note and on September 14th, 1936, he
presented the instrument on which suit was brought, the
amount of which was $3,000, signed by the brewing company
as maker and by himself as endorser. The bank discounted

the note, the proceeds were credited to the brewing company and used to pay off Mr. Williams' personal note. Thus the appellant instead of a primary liability on his own paper became secondarily liable on the note of the brewing company, of which he was treasurer. A waiver of defense was endorsed on the instrument. At the time of this transaction the brewing company's indebtedness to the bank was something over $16,000 for which there had been assigned accounts receivable in double the sum of the debt. This had been the brewing company's practice and method of securing its loans. At the trial the plaintiff proved the note and that no part of the principal sum was paid. After hearing the appellant and his witnesses, the defense being that the note had been paid in whole or in part, the court directed a verdict for the plaintiff.

The appellant contends the trial court erred in several respects. First, that it was error to direct a verdict, the contention being that the note had been paid in full or in part, or should have been, out of the proceeds of the accounts receivable and that that issue should have been submitted to the jury; second, that the court erred in sustaining an objection to a question addressed to one of the witnesses. The excluded question was properly overruled. It called for a conclusion, was founded on hearsay, was vague and indefinite, and was properly excluded on any of these grounds. The third point is that the trial court "excluded from evidence a certified copy of the decision and memorandum in the bankruptcy court." This ruling of the learned judge was also correct. At three stages of the trial this "memorandum" was referred to—once, when offered for identification purposes, which offer was overruled with no exception to the ruling. The court said the proposed exhibit was not "identified" and that was true; again, counsel for appellant read from the memorandum in arguing for a directed verdict for the appellant but the exhibit was not offered at that time and, finally, at the close of the case the exhibit was offered and objection to it was sustained. We think the ruling was correct. The memorandum of the referee in bankruptcy was not shown to have any relevancy. A decree or judgment of a court of

competent jurisdiction in an action between the same parties might be *res judicata* of a matter subsequently arising in another action but there was no proof identifying the excluded exhibit as having any such character. As a matter of simple logic, surely what has been determined in a different tribunal, between different parties, has no value at all in a suit between other parties and in a distinctly separate tribunal where the issue is not the same. This—the doctrine of *res judicata*— was the only theory upon which the exhibit could be justified and the indispensable indicia of *res judicata* were neither proved nor present.

We turn now to the first point. Some months after the discount of the note endorsed by Mr. Williams, the brewing company, finding itself in financial straits, went into bankruptcy for reorganization purposes. The trustees borrowed moneys from the plaintiff bank and the contention is that the collateral accounts receivable were used to pay off the indebtedness incurred by the trustees rather than the brewery's indebtedness in general and this appellant's obligation in particular. It is of no purpose to go into details except to say there is no proof whatever that this was done, certainly no specific, tangible proof—nothing that rises higher than vague assumption.

The main argument in this appeal is that certain of these accounts pledged as collateral were intended to be applied, when collected, in reduction of the note in suit, but there is no proof of this. There is no writing or other credible evidence that the brewing company assigned these bills receivable as particular security for the note in question. The writing on the tabulation of bills receivable is general in character, the recitation being that the accounts mentioned "are hereby sold, assigned, transferred and set over to the Elizabeth Trust Company." There are eight pages of such accounts receivable. Four of them are dated October 8th, 1936 (subsequent to the loan in question) and carry the general assignment just mentioned; the preceding four pages of accounts receivable are not dated. It had been the custom of the brewing company, as a borrower from the bank, to send in these accounts receivable from time to time as support for the

continuing loans, as a result of which, as a matter of course, the borrower received periodic statements showing credit for amounts collected. There was no proof whatever that the directors of the brewing company had assigned the bills receivable to secure this particular note any more than to reduce any of the other notes of the brewing company; nor was there any proof that the secretary of the bank, who made this particular loan after authority so to do was given him by the bank's directors, had any competency or received any direction to apply the proceeds of collected bills to reduce this note.

It was conceded at the trial by the appellant that insufficient money was collected by the bank on these accounts receivable to pay the brewery's debts to the bank exclusive of the note in question but counsel insisted that another piece of collateral, called the Breeden mortgage, had been assigned for the debt in question and that any payment on acount of the principal of the Breeden mortgage should have been set off in reduction of the note in suit. We do not so read the testimony. The appellant testified that the Breeden mortgage was left with the bank prior to the transaction in question. The circumstances, as related by him, were: "We tried to borrow money on it [Breeden mortgage] and it was refused, so I left it there open and they applied it to something sometime or other. So then we saw fit to apply it to that note" (*i. e.*, the note bearing his endorsement). The fact situation therefore was that the mortgage was taken to the bank for the purpose of using it to borrow money. The loan was refused, the mortage was left at the bank and, after the note in question was made, Williams, the appellant, whose relationship to or control of the said mortgage does not appear, concluded that the mortgage should be applied to the obligation which he had endorsed. There was no power in him to accomplish any such result. The mortgage was left at the bank without instructions and without assignment. The fact that the mortgage debt was reduced by the obligor and the proceeds applied by the bank in reduction of the brewery company's obligations does not help appellant's position. The plaintiff was under no duty to apply such proceeds to the note on which appellant was obligated.

We perceive no evidence in the record which serves to make the appellant's liability on the obligation in suit a question of fact.

The judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 16.

*For reversal*—None.